**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| ARCHBISHOP MITCHELL T. ROZANSKI, FR. CHRISTOPHER SCHROEDER, ARCHDIOCESE OF ST. LOUIS, MISSOURI,<br><br>*Plaintiffs*,<br><br>v.<br><br>SHERIFF GARY STOLZER, MAJOR JASON SCHOTT, and LIEUTENANT ANDREW JOHNSON, in their official capacities; MARKWAYNE MULLIN, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, DAVID J. VENTURELLA, ACTING DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, and JENNIFER M. FENTON, ASSOCIATE DIRECTOR, OFFICE OF PROFESSIONAL RESPONSIBILITY, in their official capacities.<br><br>*Defendants*. | ) | CASE NO.: 1:26CV00224 MTS |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION FOR AN ORDER DIRECTING THE PARTIES TO MEDIATION AND RESETTING THE HEARING DATE

The Federal Defendants are not content to tell Catholic clergy when they may minister. They now presume to lecture them on the meaning of the Gospel. They invoke Matthew 5:25–26 to justify delay, then stop quoting just where the warning begins. Mot. ¶ 2. In full, the verses read, "Settle matters quickly with your adversary who is taking you to court. Do it while you are still together on the way, *or your adversary may hand you over to the judge, and the judge may hand you over to the officer, and you may be thrown into prison. Truly I tell you, you will not get out until you have paid the last penny.*" Matthew 5:25–26 (NIV) (emphasis added). The point is hard to miss: resolve the dispute before the judge must intervene.[1] But Federal Defendants, whose confidence as biblical instructors exceeds their grasp of the text, have got the teaching backward. If they wish to take it to heart, the lesson is that this dispute should have been resolved before Plaintiffs had to sue. It is not that Plaintiffs' own faith requires them to wait still longer to practice it.

Plaintiffs sought dialogue long before suing: three separate requests for access to provide ministry to detainees went ignored or were rebuked. ECF No.

[1] Before undertaking to instruct Plaintiffs, Federal Defendants might begin with the question Scripture puts to self-appointed instructors: "you, then, who teach others, do you not teach yourself?" Romans 2:21 (NIV).

1-7, Lydon Decl. ¶¶ 4–7 & Ex. A. And while the parties have agreed on a mediator and mediation date, that process should not delay relief for the immediate constitutional harm detainees and priests are suffering. From the beginning of this case, Plaintiffs have offered to proceed on parallel tracks—keep discussions open, but litigate to ensure that if a resolution cannot be reached, relief will be available from the Court. On that basis, the parties jointly negotiated and proposed the injunction briefing schedule, precisely as the Local Rules contemplate. E.D. Mo. L.R. 6.02(A)(2). Plaintiffs' good faith efforts to resolve this dispute should not now be used as a cudgel against them to postpone the hearing.

The Court should deny Federal Defendants' motion, ECF No. 41, or at least preserve the November 18 hearing and November 13 disclosure deadline. Before ruling, the Court should consider Plaintiffs' forthcoming November 6 injunction reply, which will explain why Defendants' promised accommodations do not equal actual sacramental access or eliminate the need for immediate relief.

## A. The agreed schedule and Plaintiffs' express reservation against delay.

Federal Defendants knew Plaintiffs' position before they joined the scheduling request. During the October 14 conference among all parties' counsel, Plaintiffs made clear that settlement discussions and the injunction

proceedings had to proceed in parallel. *See* Ex. 1, Schmidt Decl. ¶ 2. Federal Defendants' counsel then told Plaintiffs' counsel that he had spoken with the Court about proposed hearing dates and confirmed that Plaintiffs' proposed dates worked for the United States. *Id.* ¶ 4. On October 16, he returned the proposed scheduling motion with minor revisions to the hearing arrangements. *Id.* ¶ 5.

On October 16, the parties jointly requested a briefing schedule and identified November 10 and November 16–19 as available hearing dates. ECF No. 25, at 2. The Court granted that request on October 21, setting Plaintiffs' reply deadline for November 6, the hearing for November 18, and witness and exhibit disclosures for November 13. ECF No. 28, at 1–2. Plaintiffs' desire to discuss settlement from the outset did not alter that schedule or waive their request for prompt judicial relief.

Plaintiffs agreed to mediate without delaying the injunction proceedings. Schmidt Decl. ¶ 10. Nothing about that position was ambiguous. On November 2, 2026, Plaintiffs reconfirmed in writing: "[a]s we made clear from our first conversations, we can all move on parallel paths. To restate our position, we do not agree to any further delay." *Id.* Federal Defendants themselves acknowledge both the November 23 mediation agreement and Plaintiffs' opposition to moving the hearing. Mot. ¶¶ 1–2; Mem. at 2, 5. Agreement on the first was not consent to the second.

Federal Defendants chose not to disclose to Plaintiffs their intent to seek to undo the agreed to November 18 hearing date until shortly *after* the Parties' selected a mediator and a date. Federal Defendants' gamesmanship is concerning because they knew Plaintiffs' steadfast position from the outset that Plaintiffs would not sacrifice the hearing date based on their good faith agreement to mediate.

**B. Mediation does not require a continuance.**

The Local Rules already answer the supposed conflict between mediation and litigation: "Unless otherwise ordered, referral to ADR does not abate or suspend the action, and no scheduled dates will be delayed or deferred, including the date of trial." E.D. Mo. L.R. 6.02(A)(2). The Court may order otherwise. But discretion to delay is not a reason to delay. Federal Defendants must explain why mediation requires postponing this hearing, not merely point out that mediation is scheduled.

There is no need to compel what the parties have already agreed to do. They have selected a mediator and a date, and Plaintiffs will participate in good faith. A referral order, if the Court considers one useful, can leave the November 18 hearing and November 13 disclosure deadline intact. Mediation requires neither a redundant order nor a postponed hearing. Of course, if a settlement is reached (now or later in the case), the parties will promptly notify

the Court in order to conserve judicial resources. But that time has not yet come.

Nor is Plaintiffs' willingness to mediate some new development. It was part of the arrangement from the outset. Federal Defendants helped obtain the schedule with that understanding; they cannot now offer the same willingness as a reason to undo it. Plaintiffs have kept their position. They ask only that the hearing remain where the parties jointly sought to put it.

Federal Defendants' preparation concerns fare no better. Mem. at 6. Preparing for mediation and a hearing naturally takes work. That is hardly a discovery, and it is the ordinary consequence of the parallel proceedings contemplated by Rule 6.02(A)(2). Federal Defendants identify no concrete inability to meet the deadlines. Their hope that settlement may narrow or eliminate the hearing is a reason to pursue settlement promptly, not to postpone the hearing in case settlement succeeds.

Federal Defendants also suggest that the Court's questions and the testimony could "taint" the parties' settlement positions. Mem. at 7. In other words, the parties might learn something about the merits. That is not a defect in mediation. A better-informed assessment will help the parties settle; it supplies no reason to withhold a hearing from Plaintiffs seeking relief from ongoing injury. The employment-dispute resolution plan cited in the

memorandum concerns a different process and does not govern this action's schedule. Mem. at 6.

This matter's pre-filing history makes Defendants' request especially misplaced. In late 2025, Father Lydon first asked Lieutenant Andrew Johnson for face-to-face visits to administer the Eucharist and Reconciliation; Johnson responded that the no-contact policy prevented them. ECF No. 1-7, Lydon Decl. ¶ 4. On May 18, 2026, the Archbishop wrote to Lieutenant Johnson requesting sacramental access, Mass, and expanded clergy hours, and inviting discussion. *Id.* ¶ 5 & Ex. A. The Archbishop received no reply. *Id.* ¶ 6. Father Lydon renewed the requests by voicemail in late August 2026. Major Jason Schott returned the call and stated that he could not comment further on the requests. *Id.* ¶ 7. Plaintiffs did not rush past dialogue to the courthouse. They sought it repeatedly before suing. Their continued willingness to talk should not become another reason to make them wait.[2]

Federal Defendants also did not disclose their intent to use an agreed-to early mediation to ask the Court to compel the Archbishop's physical attendance at mediation. Mem. at 4–5; Schmidt Decl. ¶ 14. To what end? The

---

[2] Since the filing of the lawsuit, Plaintiffs have continued to press early resolution given the important religious liberty rights being denied. On October 20, 2026, Plaintiffs made a proposal to resolve this dispute. As of the filing of this opposition, Defendants have not received a response. Schmidt Decl. ¶ 7. Plaintiffs proposed dates for a mediation *before* the preliminary injunction hearing. The Federal Defendants rejected those dates. Schmidt Decl. ¶ 9.

Archbishop will be in Rome for his *Ad Limina* visit on the agreed mediation date and will authorize the Archdiocese's General Counsel, Thomas Buckley, to represent him with settlement authority. Schmidt Decl. ¶ 15. Plaintiffs have agreed to mediate, and the Archbishop will provide an authorized representative. Federal Defendants identify no reason why that arrangement would be inadequate. Settlement authority is the point. Demanding the Archbishop's physical presence without first conferring with Plaintiffs reeks of further gamesmanship and turns an agreed mediation into an unnecessary collision with his religious responsibilities. *See id.* ¶¶ 11–15. It is also, to be sure, an odd way to advance settlement of a case. By the same logic, Plaintiffs could insist that Secretary of Homeland Security Markwayne Mullin or Acting ICE Director David Venturella attend mediation personally. But Plaintiffs have not made that demand. So long as someone with settlement authority is present to represent the Federal Defendants, that is enough.

Regardless, the local rule permits attendance in person or by video, unless the Court or neutral requires otherwise, and supplies a process for resolving attendance disputes. E.D. Mo. L.R. 6.02(C)(1)(a), (c). Plaintiffs ask that any referral order expressly permit Buckley to attend as the Archbishop's authorized representative, subject to the Court's approval and applicable requirements. Plaintiffs seek a workable mediation, not an exemption from

meaningful participation. No attendance issue justifies postponing the injunction hearing.

### C. Delay would prolong the prejudice at the heart of this action.

The dispute is not whether the parties can spare themselves some litigation work. It is whether clergy can administer, and detainees can receive, the sacraments. ECF No. 8, at 8, 39. Plaintiffs' reply will explain that the no-contact restrictions remain in practice, despite Defendants' assurances, and that Defendants' announced accommodations have not produced any on-the-ground change in policy. A promised policy is not a received sacrament. Neither the prospect of implementation nor the possibility of settlement provides any remedy for that deprivation in the meantime.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam) (citation omitted). Plaintiffs' motion explains why that principle applies here. ECF No. 8, at 39. A later agreement cannot give back the opportunity to receive a sacrament lost while the parties negotiated. And this is not a request for a fixed five-day postponement from November 18 to November 23. Federal Defendants propose no replacement hearing date at all, only a hearing sometime after mediation. Mem. at 5. Plaintiffs would surrender a date certain for relief uncertain.

The Court's November 18th hearing on the pending preliminary injunction motion will sharpen the focus and assist the parties' in reaching a negotiated permanent injunction or consent decree. If the parties reach a resolution, the parties will say so. Until then, the possibility of an agreement is no substitute for the opportunity to obtain a ruling.

## D. Conclusion

The Court should deny Federal Defendants' motion. If it orders mediation, it should preserve the November 18, 2026 hearing and November 13 witness and exhibit disclosure deadline. Before ruling, it should consider Plaintiffs' injunction reply, due November 6. Plaintiffs will mediate. Their request for immediate relief should proceed.

Dated: November 5, 2026

Respectfully submitted,

*s/ Christopher J. Schmidt*

Christopher J. Schmidt #53362 (MO)
Barbara Smith Tyson #66237 (MO)
Edward G. Houser #77733 (MO)
BRYAN CAVE LEIGHTON PAISNER LLP
211 N. Broadway, Suite 3600
St. Louis, MO 63102
Phone: (314) 259-2000
christopher.schmidt@bclplaw.com
barbara.smith@bclplaw.com
ed.houser@bclplaw.com

Clayton Buckner #72730 (MO)
BRYAN CAVE LEIGHTON PAISNER LLP
1200 Main St., Suite 3800
Kansas City, MO 64105
Phone: (816) 374-3200
clayton.buckner@bclplaw.com

Caleb T. Mathena (admitted pro hac vice)
BRYAN CAVE LEIGHTON PAISNER LLP
1201 Third Ave., Suite 5000
Seattle, WA 98104
Phone: (206) 600-6641
caleb.mathena@bclplaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2026, a copy of the foregoing was served on all counsel of record by operation of the Court's electronic filing system.

*s/ Christopher J. Schmidt*