**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| ARCHBISHOP MITCHELL T. ROZANSKI, *et al.*, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No. 1:26-cv-00224-MTS |
| SHERIFF GARY STOLZER, *et al.*, | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

"Congress has chosen to police our borders by detaining illegal aliens found in our country pending their removal proceedings." *Sosnava Rodriguez v. Vergara*, --- F.4th ---, No. 26-50183, 2026 WL 3181188, at *14 (5th Cir. Oct. 23, 2026) (en banc) (Ho, J., concurring) (citing 8 U.S.C. § 1225(b)(2)(A)); *see Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026). U.S. Immigration and Customs Enforcement uses the Ste. Genevieve County Detention Center to house approximately 150 of these individuals. The Detention Center is located within the boundaries of the Archdiocese of St. Louis. Last month, the Archdiocese, its Archbishop, and a single priest filed this action against multiple Missouri and federal governmental officials seeking declaratory and injunctive relief regarding Catholic priests' ability (or inability) to "meaningfully minister[] to

Catholic federal detainees housed there." Doc. [1] ¶ 1.[1] Plaintiffs have sought a preliminary injunction requesting sweeping relief. Doc. [7] at 6–8.[2]

Defendants oppose Plaintiffs' Motion for Preliminary Injunction. Docs. [32], [33]. Nevertheless, Defendants have announced numerous modifications to their policies and procedures to address Plaintiffs' religious-liberty concerns. Counsel for the federal Defendants, as an officer of the Court, has detailed the significant changes Defendants have made. Doc. [32]. In addition, Defendant Major Schott has corroborated these changes in an affidavit, describing them at length. Doc. [32-1].[3]

Plaintiffs make little of Defendants' modifications. Plaintiffs maintain that "[b]ecause Defendants could return to [the old] policy at any time, it is *that* dispute this

---

[1] Not a single detainee joined them in filing this action, *see* Fed. R. Civ. P. 20(a)(1), and no detainee has sought to join this action since its filing, *see* Fed. R. Civ. P. 24.

[2] Some of Plaintiffs' requested relief seems broader than necessary to remedy the underlying alleged wrong. *See Walmart Inc. v. Cuker Interactive, LLC*, 949 F.3d 1101, 1112 (8th Cir. 2020) ("An injunction must not be 'broader than necessary to remedy the underlying wrong.'"). For example, Plaintiffs ask the Court to enjoin "the ICE Defendants" from "paying any federal funds to the Ste. Genevieve detention center" and "housing new ICE detainees" until the detention center has implemented Plaintiffs' demanded religious accommodations. Doc. [7] at 7. Yet there are certainly aliens detained in this country of other faiths or who have no faith such that detention at the facility could not impinge on the exercise of anyone's religion.

[3] To show that a preliminary injunction may be appropriate, Plaintiffs not only must show that they are likely to "succeed on the merits" of their claims, *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc), but they must also "make a 'clear showing'" that they are "'likely' to establish each element of standing," *Kohls v. Ellison*, 166 F.4th 728, 731 (8th Cir. 2026). *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 256 n.4 (6th Cir. 2018). Defendants have made modifications to their policies and procedures even though it is far from clear that Plaintiffs have standing on all their claims, *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (explaining that "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek"); *cf.* Doc. [32] at 6 n.2, and though there are at least some significant obstacles regarding their success on the merits, *see Qatanani v. Att'y Gen. United States of Am.*, 144 F.4th 485, 521 (3d Cir. 2025) (Matey, J., dissenting).

Court must resolve, not the fictional substitute case Defendants wish to litigate over the legality of their purportedly modified policy." Doc. [47] at 19. With that point, it is Plaintiffs who are being "myopic." *See id.* The modified policies absolutely bear on the question of whether preliminary relief is appropriate here. Even when a defendant's voluntary cessation of challenged practices does not moot a case, "[s]uch abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982); *accord Revenue Mgmt. Sols., LLC v. Com. Bank*, 183 F.4th 618, 627 (8th Cir. 2026) (citing *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 489 (8th Cir. 1993)); *cf. S.J.W. ex rel. Wilson v. Lee's Summit Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012) ("Speculative harm does not support a preliminary injunction." (citation omitted)).

Plaintiffs and Defendants have agreed to attend mediation in the hope of resolving their disagreements without judicial intervention. After reviewing all the filings in this case, the Court concludes that a referral to mediation is appropriate here. *See* E.D. Mo. L.R. 6.01. Settlement in all cases should be encouraged. *Evans v. Jeff D.*, 475 U.S. 717, 760 (1986) (Brennan, J., dissenting) ("I agree with the Court that encouraging settlements is desirable policy."); *Hammond Packing Co. v. Dickey*, 183 F. 977, 978 (8th Cir. 1911) (Van Devanter, J.) ("It is the policy of the law to favor the settlement of disputes"); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004) (courts are "bound to encourage" settlement). Here, it is especially important to encourage it because it would

be best for all parties (and the public) if the parties resolve their dispute on mutually acceptable grounds.

The U.S. Court of Appeals for the Eighth Circuit has noted the obvious truth that prisons and jails face "complex and intractable problems" of administration. *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982). There are no doubt circumstances in which injunctive relief would be appropriate in cases involving prisons and jails. But federal courts are ill-equipped to interfere with matters of jail administration that implicate security concerns absent a compelling need for judicial intervention, particularly at a preliminary stage. For that reason, "[i]n the prison context, a request for injunctive relief must always be viewed with great caution." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995). Defendants plainly have shown that they are willing to modify their policies. Defendants are the experts on what is safe and appropriate while Plaintiffs are the experts on what their faith can and cannot allow. Having them all determine if common ground can be found is desirable here.

In order that the parties may focus on mediation and hopefully resolve this matter without Court intervention, the federal Defendants have asked that the Court postpone the hearing on Plaintiffs' Motion for Preliminary Injunction. Doc. [41]. Plaintiffs forcefully oppose the Motion. Doc. [44]. The Court agrees with the federal Defendants and will postpone the hearing set in this matter and the associated disclosure deadline pending further order of the Court. The Court concludes this postponement is well within its discretion. For one thing, it is not always necessary to hold a hearing on a motion for preliminary injunction. The Local Rules of this Court are clear that hearings on motions

are the exception, not the norm. E.D. Mo. L.R. 4.02(A). The Eighth Circuit has noted that an evidentiary hearing is required "prior to *issuing* a preliminary injunction only when a material factual controversy exists." *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 744 (8th Cir. 2002) (emphasis added) (affirming the grant of a preliminary injunction without a hearing). Making the determination of whether a hearing is necessary is within a district court's sound discretion. *Id.*; *Jackson v. Fair*, 846 F.2d 811, 819 (1st Cir. 1988); *Bruce v. Reese*, 431 F. App'x 805, 806 (11th Cir. 2011) (per curiam). If the Court has the discretion to cancel the hearing in this matter, then it surely has the discretion to move it to a later date if it has good reason to do so.

Plaintiffs argue that a delay would prolong the prejudice at the heart of this action. The Court disagrees. First, the Court will continue to consider Plaintiffs' Motion and make it one of the Court's priorities, as the Court does for any motion for preliminary injunction. *See* 28 U.S.C. § 1657. Moving the hearing date does not mean the Court's decision (if one still is needed) necessarily will be issued any later than it would have been. Second, Plaintiffs do not seem to ever argue that any individual in Ste. Genevieve County Detention Center is wrongfully detained. Rather, these lawfully detained individuals are in a unique situation because they "hold the keys" to their confinement. *See Sosnava Rodriguez*, 2026 WL 3181188, at *10. They can free themselves "at any moment by agreeing to leave the country." *See id.*; *see also* Doc. [32-2] ¶ 6 (declaration of the Acting Assistant Field Officer Director for United States Immigration and Customs Enforcement noting that, in the last six months, there have been nineteen inquiries from Ste. Genevieve detainees about voluntary departure and zero about religious

accommodations). Given that the detainees' own choices are causing any injury, their argument regarding delay carries much less weight.

For these reasons, the Court will grant the federal Defendants' Motion.

*

The parties also dispute whether Archbishop Rozanski should be required to attend mediation. The Court finds that he should be so required.

Under this District's Local Rules, "all named parties and their counsel are required to attend the ADR conference, participate in good faith, and possess the requisite settlement authority unless excused under this Rule." E.D. Mo. L.R. 6.02(C)(1)(a). This obligation can be satisfied by appearing in person or by video conference. *Id.*

The Archbishop brings several arguments as to why he should be excused from attending the mediation the parties have scheduled for November 23. First, the Archbishop notes that he will be in Rome for his *ad limina* visit at the time of the mediation. Doc. [44] at 8. This reasoning is not sufficient. First, the parties agreed on November 23 as the mediation date, *see* Doc. [41] ¶ 1; if the Archbishop cannot attend, then the parties can set a different date. Second, the Local Rules allow for attendance via video conference; therefore, the Archbishop can attend the mediation from Rome while still fulfilling his ecclesiastical obligations.

The Archbishop also argues that he need not attend the mediation because the Archdiocese's general counsel, Thomas Buckley, will represent the Archbishop with full settlement authority. Doc. [44] at 8. This argument is also unconvincing. The Local Rules require personal attendance at mediation because the named parties have the best

knowledge about the facts of the case and their litigation goals. *See* L.R. 6.02(C)(2)(a) (requiring any corporation to be represented by "a person . . . who is knowledgeable about the facts of the case"). Mr. Buckley may represent the Archdiocese. *Id.* But the Archbishop, a natural person, is asserting violations of his own First Amendment rights. *See* Doc. [1] ¶¶ 94–101. The person with the best knowledge of those violations, and what the Archbishop wants from mediation, is the Archbishop himself.

Finally, the Archbishop argues that forcing him to attend the mediation would be equivalent to "insist[ing] that Secretary of Homeland Security Markwayne Mullin or Acting ICE Director David Venturella attend mediation personally." Doc. [44] at 8. This argument fails for several reasons. First, Mullin and Venturella are being sued in their official capacity, not their individual capacity. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (citations omitted). Plaintiffs' suit is functionally a suit against DHS and ICE, not Mullin or Venturella individually, and the Local Rules allow someone besides the head of a government agency to represent it in mediation. E.D. Mo. L.R. 6.02(C)(2)(b). The Archbishop, by contrast, is bringing this suit individually; therefore, there is no hypocrisy in requiring the Archbishop to attend but not requiring Mullin or Venturella to attend.

Second, unlike Mullin and Venturella, the Archbishop is a plaintiff in this litigation. The Archbishop voluntarily chose to bring this lawsuit, and that decision carries responsibilities. Representatives from ICE are traveling from Washington, D.C., to attend this mediation. Doc. [45] at 5. If this Court requires such a burden for a

defendant, it is far less of a burden for a named plaintiff. Finally, if the Archbishop truly cannot attend the mediation, he can voluntarily dismiss himself as a party under Federal Rule of Civil Procedure 41(a)(1)(A)(i).

Since there is no sufficiently compelling reason to excuse attendance, this Court will require the Archbishop to attend the mediation, either in person or by video conference.

* * *

"A preliminary injunction is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)); *accord Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268, 273 (4th Cir. 2025) ("[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances . . . ." (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991)). Defendants here have announced significant changes to their policies and procedures to address Plaintiffs' concerns, and the parties have agreed to mediate in an attempt to reach a settlement. The Court will refer this matter to alternative dispute resolution pursuant to Local Rule 6.01 and postpone the hearing on Plaintiffs' Motion for Preliminary Injunction in the interim while continuing to consider the parties' arguments should it be necessary to proceed.

Accordingly,

**IT IS HEREBY ORDERED** that the federal Defendants' Motion to Continue, Doc. [41], is **GRANTED**.

The Court will refer this matter to alternative dispute resolution via separate order.

Dated this 9th day of November 2026.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE